**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHANCE WADE DRISCOLL,

    Defendant - Appellant.

No. 16-8118

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. Nos. 1:16-CV-00082-SWS and 2:04-CR-00137-WFD-1)**
_____

Meredith B. Esser, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, and Grant R. Smith, Assistant Federal Public Defender, on the briefs), Office of the Federal Public Defender for the District of Colorado, Denver, Colorado, appearing for Appellant.

Jason M. Conder, Assistant United States Attorney (Christopher A. Crofts, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Wyoming, Lander, Wyoming, appearing for Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **BACHARACH**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

    This is a 28 U.S.C. § 2255 challenge, under *Johnson v. United States*, 135 S. Ct.

2551 (2015), to an Armed Career Criminal Act (ACCA) sentencing enhancement. In

2004, Chance Wade Driscoll ("Driscoll") pleaded guilty to being a felon in possession of a firearm. At Driscoll's sentencing in January 2005, the sentencing court[1] accepted the Presentence Investigation Report's ("PSR") determination that Driscoll was an armed career criminal based upon one previous drug conviction and two previous burglary convictions. The sentencing court did not state whether the two burglary convictions counted as violent felonies under the ACCA's enumerated offenses clause or the residual clause. Over ten years later, Driscoll filed this § 2255 motion, arguing it was possible the sentencing court relied on the now-unconstitutional residual clause of the ACCA to enhance his sentence. The district court denied his § 2255 motion as untimely. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291, 2255(d), we REVERSE and REMAND with instructions to VACATE Driscoll's sentence and resentence him.

**I**

On September 20, 2004, Driscoll pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and using or carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i). In Driscoll's PSR, the probation office determined Driscoll qualified as an armed career criminal under 18 U.S.C. § 924(e)(2)(B) due to his prior convictions under: (1) Nebraska's burglary statute; (2) Wyoming's burglary statute; and (3) Wyoming's marijuana possession statute. Driscoll did not object to the PSR. On January 3, 2005, the sentencing court sentenced Driscoll to 120 months for the § 922(g)(1) conviction and 60

---

[1] To avoid confusion, we refer to the court that sentenced Driscoll as the "sentencing court" and the court that denied his § 2255 motion as the "district court."

2

months for the § 924(c)(1)(A)(i) conviction, to be served consecutively.  The sentencing court observed that neither party objected to the guideline calculation contained in the PSR.

At the time of Driscoll's sentencing, a defendant qualified as an armed career criminal under the ACCA if he or she had "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1) (2004).  Congress provided the following definition of "violent felony":

> (B)  [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> > (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii)  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

*Id.* § 924(e)(2)(B) (2004).  That is, a prior conviction could serve as a predicate violent felony if it fit under (1) the elements clause ("has an element the use, attempted use, or threatened use of physical force against the person of another"); (2) the enumerated offenses clause ("is burglary, arson, or extortion, involves use of explosives"); or (3) the residual clause ("or otherwise involves conduct that presents a serious potential risk of physical injury to another").  *See United States v. Hamilton*, 889 F.3d 688, 691 (10th Cir. 2018).

One of Driscoll's three predicate offenses was a prior conviction for violating the Nebraska burglary statute. At the time of Driscoll's Nebraska burglary conviction in 1988, that statute stated:

> (1) A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value.
>
> (2) Burglary is a Class III felony.

Neb. Rev. Stat. § 28-507 (1977).

More than ten years after Driscoll's sentencing, on June 26, 2015, the Supreme Court issued *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Court held that one definition of "violent felony" in the ACCA—"or otherwise involves conduct that presents a serious potential risk of physical injury to another" (otherwise known as the "residual clause")—is unconstitutionally vague. *Id.* at 2563. On April 18, 2016, the Court issued *Welch v. United States*, 136 S. Ct. 1257 (2016), which made *Johnson* retroactively applicable to cases on collateral review. *Id.* at 1268.

On April 20, 2016 (less than one year after *Johnson*), Driscoll filed his first § 2255 motion to vacate his sentence. He claimed the sentencing court enhanced his sentence under the residual clause and that, pursuant to *Johnson* and *Welch*, he was entitled to relief.

On October 10, 2016, the district court dismissed Driscoll's § 2255 motion. The district court held that, "[b]ecause Driscoll cannot show that his sentence was enhanced under the residual clause, *Johnson* is inapplicable and his § 2255 motion is therefore

4

time-barred." ROA, Vol. I, at 105. Following its order, the district court granted Driscoll a certificate of appealability. On October 11, 2016, Driscoll timely appealed.

## II

"On appeal from the denial of a § 2255 motion, ordinarily 'we review the district court's findings of fact for clear error and its conclusions of law de novo.'" *United States v. Barrett*, 797 F.3d 1207, 1213 (10th Cir. 2015) (quoting *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011)).

## A.     Timeliness and Procedural Default

Less than a year after the district court dismissed Driscoll's § 2255 motion, we decided *United States v. Snyder*, 871 F.3d 1122 (10th Cir. 2017), *cert. denied*, --- S. Ct. ---, 2018 WL 1994823 (2018), a case factually similar to this one. *Snyder* also involved a pre-*Johnson* sentencing enhancement under the ACCA, and the sentencing record was unclear as to whether the *Snyder* sentencing court relied on the enumerated offenses clause or the residual clause to enhance Snyder's sentence. *Id.* at 1124–25. Within a year following *Johnson*, Snyder filed a § 2255 motion, challenging his sentencing enhancement as invalid under *Johnson*, and arguing the record did not establish whether his sentence was enhanced under the residual clause or the enumerated offenses clause. The government argued the defendant's motion was both untimely and procedurally barred. We rejected both arguments. *Id.* at 1126–28.

First, we discussed whether Snyder's § 2255 motion was timely under § 2255(f), which "allows a § 2255 motion to be filed within one year of 'the date on which the right

5

*asserted* was initially recognized by the Supreme Court.'" *Id.* at 1126 (quoting

§ 2255(f)). We held:

> Whether or not Snyder can ultimately prevail on his motion, he *asserts* the right established in *Johnson*, to be free from a sentence purportedly authorized by the unconstitutionally vague residual clause. Thus, his § 2255 motion, filed within a year of the Court's decision in *Johnson*, is timely under § 2255(f)(3).

*Id.* Applying *Snyder*, Driscoll's § 2255 motion was timely because he *asserted* a *Johnson*

claim within a year of the Court's *Johnson* decision. The district court's holding that,

"[b]ecause Driscoll cannot show that his sentence was enhanced under the residual

clause, *Johnson* is inapplicable and his § 2255 motion is therefore time-barred," ROA,

Vol. I at 105, was legally erroneous. For timeliness purposes, it does not matter

"[w]hether [Driscoll] can ultimately prevail on his motion." *Snyder*, 871 F.3d at 1126. It

only matters that "he *asserts* the right established in *Johnson*." *Id.*

Second, in *Snyder* we held

> Snyder asserts, and we agree, that he has demonstrated cause and prejudice sufficient to overcome the procedural default rule.
> . . . .
> As the District of Columbia Circuit has noted, "it is fair to say that no one—the government, the judge, or the [defendant]—could reasonably have anticipated *Johnson*." *United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016). . . . We therefore conclude that the *Johnson* claim was not reasonably available to Snyder at the time of his direct appeal, and that this is sufficient to establish cause.
> . . . .
> Snyder was sentenced under 18 U.S.C. § 924(e)(1), which carries a mandatory minimum sentence of fifteen years' imprisonment. He claims that this statute does not apply to him and that his ACCA sentence enhancement is invalid after *Johnson*. If he is correct, he should instead have been sentenced under 18 U.S.C. § 924(a)(2), which carries a statutory maximum sentence of only ten years' imprisonment. Thus, there is not just a possibility, but a certainty,

6

that the alleged error influenced the outcome of Snyder's sentencing, because his sentence of 172 months and 10 days would exceed the statutory maximum allowed for his crimes. A sentence that is not authorized by law is certainly an "actual and substantial disadvantage" of "constitutional dimensions." *See Frady*, 456 U.S. at 170. Thus, Snyder has shown actual prejudice arising from the asserted error. Because he has shown both cause and prejudice, his claim overcomes procedural default.

*Id.* at 1127–28. Driscoll adequately shows both cause and prejudice as well. If "the *Johnson* claim was not reasonably available to Snyder at the time of his direct appeal," and that was "sufficient to establish cause," then surely Driscoll has also established cause, considering he was sentenced two months before Snyder. Moreover, if Driscoll is correct, then he should instead have been sentenced under 18 U.S.C. § 924(a)(2), which carried a statutory maximum sentence of only ten years' imprisonment. Because a "sentence that is not authorized by law is certainly an 'actual and substantial disadvantage' of 'constitutional dimensions,'" *Snyder*, 871 F.3d at 1128 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)), Driscoll has shown actual prejudice arising from the asserted error. Thus, like Snyder, "[b]ecause he has shown both cause and prejudice, [Driscoll's] claim overcomes procedural default." *Id.*

## B. Merits

Having concluded that Driscoll's § 2255 motion was both timely and not procedurally defaulted, we proceed to the merits of the motion. To determine whether Driscoll succeeds on the merits of his § 2255 motion, we apply harmless-error review. *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993) (applying harmless-error review to § 2254 movants); *United States v. Dago*, 441 F.3d 1238, 1246 (10th Cir. 2006)

7

(holding "the logic behind *Brecht* also is applicable in § 2255 cases"). First, we determine whether the sentencing court erred by relying on the residual clause to enhance Driscoll's sentence. Second, if the sentencing court erred, we determine whether that error "had substantial and injurious effect or influence in determining" Driscoll's sentence. *Brecht*, 507 U.S. at 638.

### 1. Error

The district court in 2016 made a finding that the sentencing court in 2005 relied on the enumerated offenses clause—*not* the residual clause—when enhancing Driscoll's sentence. We disagree.

Once again, this case presents a similar question to the one at issue in *Snyder*, where the district court "found . . . that [the sentencing court] did not apply the ACCA's residual clause in sentencing Snyder under the ACCA." *Snyder*, 871 F.3d at 1128. To review the district court's finding in *Snyder*, we (1) looked at the sentencing record to confirm that "there is no mention whatsoever of the residual clause in the PSR or any of the other [sentencing] court pleadings or transcripts," and then (2) examined the "relevant background legal environment" at the time of sentencing to determine whether the district court would have needed to rely on the residual clause.[2] *Id.* at 1130. When we review a district court's finding that a sentencing court did not apply the residual clause to enhance

---

[2] We do not mean to suggest that both steps are required in every case. It is certainly possible that the sentencing record reveals the sentencing court unambiguously relied on a clause other than the residual clause to enhance a defendant's sentence under the ACCA. In such a circumstance, it might not be necessary to proceed to *Snyder*'s second step, because the second step is only useful insofar as it helps to show the most likely reasoning of the sentencing court, when on review, we are presented with an ambiguous sentencing record.

a defendant's sentence, we review the factual determinations about the sentencing record

for clear error and the legal conclusions about the relevant background legal environment

de novo.[3]

Applying *Snyder*'s first step here, the record of Driscoll's 2005 sentencing does

not contain any mention of the residual clause. It similarly contains no mention of the

enumerated offenses clause. Thus, the district court did not err in its factual finding that

"[t]he record makes no reference to the residual clause."[4] ROA, Vol. I at 97. That

ambiguity, however, does not end our analysis.

Moving to *Snyder*'s second step, we turn to the relevant background legal

environment at the time of Driscoll's sentencing. Because *Snyder* discussed the "relevant

background legal environment" for a 2005 sentencing enhancement based upon prior

burglary convictions, the following passage from *Snyder* is instructive:

> In this case, Snyder's sentencing proceeding occurred against the
> backdrop of the Supreme Court's decision in *Taylor* [*v. United*

---

[3] As a general matter, when reviewing the district court's denial of a § 2255 motion, "we review the district court's findings of fact for clear error and its conclusions of law de novo." *Barrett*, 797 F.3d at 1213 (quotation omitted). As we held in *Snyder*, a district court's "determination that a defendant qualifies for an ACCA enhancement is a finding." 871 F.3d at 1128–29. But that finding rests on the sentencing record, which is "a matter of historical fact," as well as "the relevant background legal environment at the time of sentencing," which is a "legal conclusion[]." *Id.* (quotations omitted).

[4] In 2016, the district court observed that "the PSR listed two burglary convictions which directly correspond with the enumerated offense of burglary." ROA, Vol. I at 97. But the sentencing record does not reference the enumerated offenses clause. To the extent that the district court assumed the sentencing court relied on the enumerated offenses clause simply because the prior convictions were burglary convictions, that is far from a safe assumption. At the time of sentencing, it had long been established that burglary convictions do not inherently fall within the ACCA's enumerated offense of burglary. *See Taylor v. United States*, 495 U.S. 575, 599 (1990).

*States*, 495 U.S. 575 (1990)].  In *Taylor*, the Supreme Court construed the ACCA's enumerated offenses clause and held

> that a person has been convicted of a burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

495 U.S. at 599.  The Court also held that "[t]his categorical approach . . . may permit [a] sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary."  *Id.* at 602.  "For example," the Court stated,

> in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id.*

In light of *Taylor*, there would have been little dispute at the time of Snyder's sentencing that his two Wyoming burglary convictions involving occupied structures fell within the scope of the ACCA's enumerated crimes clause.  To be sure, the Wyoming statute under which these convictions arose includes entry of "occupied structure[s] or vehicle[s]."  Wyo. Stat. § 6-3-301(a).  But it would have been permissible for the district court to examine the underlying charging documents and/or jury instructions to determine if Snyder was charged only with burglary of buildings.  And the PSR in Snyder's case actually did just that, without any objection from Snyder.

*Snyder*, 871 F.3d at 1129–30 (some parallel citations omitted).

In 1988, Driscoll was found guilty of violating Nebraska's burglary statute, Neb. Rev. Stat. § 28-507. ROA, Vol. I at 29–31; *id.*, Vol. III at 48. In relevant part, Nebraska's burglary statute states that "[a] person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." Neb. Rev. Stat. § 28-507 (1977).

Because "any real estate or any improvements erected thereon" is broader than "building or structure," the sentencing court could have looked to the underlying record of conviction. *See, e.g.*, *United States v. Green*, 55 F.3d 1513, 1516 (10th Cir. 1995) (considering the "charging document" because the "defendant [was] convicted under a state statute defining burglary broader than *Taylor*"). The information underlying Driscoll's 1988 Nebraska burglary conviction states:

> [T]he above-named defendant, on or about September 6, 1988, then in Lincoln County, Nebraska, did willfully, maliciously, and forcibly break and enter real estate or improvements erected thereon, to wit: Stockman Land Corp, 1218 N. Ash, North Platte, with intent to commit any felony or with intent to steal property of value.

ROA, Vol. I at 29. The PSR informed the sentencing court that Driscoll burglarized the above property. *Id.*, Vol. III at 48 ("The defendant forcibly entered the Stockman Land Corporation in North Platte, Nebraska, with the intent to steal property.").

Unlike in *Snyder*, the information underlying Driscoll's 1988 Nebraska burglary conviction does not confirm that Driscoll burglarized a "building or structure" within the generic definition of burglary. The information gives an address, but it is unclear whether Driscoll burglarized a building at that address, or simply a fenced-in property at

11

that address. Because Nebraska's burglary statute criminalizes breaking and entering "any real estate," a conviction under the statute is not limited to breaking and entering a building or structure—it could involve opening a gate and stealing a bicycle on private property. *See, e.g.*, *State v. Greer*, 596 N.W.2d 296, 303 (Neb. 1999) ("Presumably, opening a gate is a breaking (not yet decided), but crawling over a fence is not." (citation omitted)); *State v. Classen*, 275 N.W.2d 91, 92 (Neb. 1979) (discussing a burglary where "a chain, which was on a gate of a fence protecting the grain bin, was cut and that a number of tools were missing"). Stated differently, if Driscoll cut a fence at Stockman Land Corporation and stole an item off of the corporation's land, then he would be guilty under Nebraska's burglary statute but not under the generic definition of burglary. Even after reading the information underlying Driscoll's Nebraska burglary conviction, the sentencing court could not have known whether he actually burglarized a *building* at Stockman Land Corporation, or simply took something that was on the corporation's *land* but not inside any building.

*Snyder* affirmed "the district court's finding that its ACCA determination rested on application of the enumerated crimes clause, rather than the residual clause," primarily because, "given the relevant background legal environment that existed at the time of Snyder's sentencing, there would have been no need for reliance on the residual clause." *Snyder*, 871 F.3d at 1130. Given the relevant background legal environment that existed at the time of Driscoll's sentencing, however, the sentencing court did not face the same type of facts as in *Snyder*. The sentencing court in this case could not have relied on the

12

enumerated offenses clause because that would have violated *Taylor.* To impose the ACCA enhancement, its only option was the residual clause.

The government maintains that Driscoll has failed to carry his burden to show the sentencing court actually relied on the residual clause. In *Snyder*, we did not address a defendant's burden of proof at the merits stage of a § 2255 challenge. The Eleventh Circuit, however, has held: "To prove a *Johnson* claim, the movant must show that—more likely than not—it was use of the residual clause that led to the sentencing court's enhancement of his sentence." *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017). In *United States v. Washington*, 890 F.3d 891, 896 (10th Cir. 2018), we adopted *Beeman*'s articulation of a § 2255 movant's burden in a slightly different context.[5] We now further adopt *Beeman*'s "more likely than not" burden of proof here, at the merits stage of a first § 2255 challenge. Consequently, Driscoll must prove that the

---

[5] *Beeman* involved a defendant pursuing his *first* § 2255 motion. In contrast, *Washington* involved a defendant pursuing his *second* § 2255 motion. 890 F.3d at 893. In the context of a second or successive § 2255 motion, there are procedural hurdles not present when filing a first § 2255 motion. Notably, a defendant must pass through two "gates." At the first gate, a defendant must make a prima facie showing that his motion relies on a new rule of constitutional law. *See id.* at 894–95; *see also* 28 U.S.C. § 2255(h). At the second gate, "a defendant must back up the prima facie showing with actual evidence to show he can meet this standard." *Washington*, 890 F.3d at 895 (quotations and ellipsis omitted). In *Washington*, we adopted *Beeman*'s "more likely than not" burden of proof in the context of a second § 2255 movant who reaches this second gate—i.e., we held a second § 2255 movant must show with actual evidence that the sentencing court, more likely than not, relied on the residual clause. *Id.* at 896. The present case and *Beeman*, however, involve a defendant pursuing his *first* § 2255 motion, where the court reaches the *merits* of the defendant's motion. Although *Washington* did not involve a defendant filing his first § 2255 motion, we find *Washington* persuasive and likewise adopt the *Beeman* test in addressing this first § 2255 motion.

13

sentencing court, more likely than not, relied on the residual clause to enhance his sentence under the ACCA.

Driscoll meets this burden. The sentencing record is ambiguous as to whether the sentencing court relied on the residual clause to enhance Driscoll's sentence, which favors neither Driscoll nor the government. But, after a review of the relevant background legal environment, we conclude that the sentencing court must have relied on the residual clause, as any reliance on the enumerated offenses clause would have violated *Taylor*. Thus, Driscoll has adequately shown it is more likely than not that the sentencing court relied on the residual clause to enhance his sentence.

### 2. Harmlessness

Although Driscoll has sufficiently shown that the sentencing court erred, we will grant him relief only if that error "had substantial and injurious effect or influence in determining" his sentence. *Brecht*, 507 U.S. at 638. As applied here, we must affirm if, even with the *Johnson* error, Driscoll has three predicate convictions to support his enhanced sentence as an armed career criminal under the ACCA.

Although the PSR identified a lengthy criminal history involving numerous prior convictions, the government limits its argument on appeal to three prior convictions that could have served as predicate offenses to qualify Driscoll as an armed career criminal: (1) a 1988 Nebraska conviction for burglary; (2) a 1992 Wyoming conviction for aiding and abetting the delivery of marijuana; and (3) a 1993 Wyoming conviction for burglary.[6]

---

[6] The PSR also identified a 1988 Nebraska criminal mischief conviction for slashing a vehicle's tires; a 1999 Utah case involving convictions for possession of

14

The sentencing court's error sufficiently prejudiced Driscoll if any of these three prior convictions do not constitute a predicate offense.

We turn first—and as it happens, last—to the 1988 Nebraska burglary conviction. As discussed above, Nebraska's burglary statute states that "[a] person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." Neb. Rev. Stat. § 28-507 (1977). The government does not argue that § 28-507 is divisible. Instead, the government argues that all of § 28-507 fits within the generic definition of burglary. Specifically, the government argues "real estate" categorically fits under "building or structure" and thus a § 28-507 conviction qualifies as a generic burglary. Stated differently, the government argues that "[t]he phrase 'real estate' as used in the statute should not be read as including unimproved land." Aple. Br. at 45. This required the government to make the following argument:

> Here, the phrase "real estate" is being used in a criminal statute prohibiting forcible "breaking and entering." In this context, the term "real estate" must mean something different in the burglary context than the everyday context, which might include unimproved land—the concept of "forcibly breaking and entering" unimproved land is plainly an awkward one.

*Id.* at 45–46.

marijuana, possession of drug paraphernalia, and driving under the influence of marijuana; a 2002 Wyoming shoplifting conviction; and a 2004 Wyoming battery conviction. ROA, Vol. III at 48–50. Because the government did not argue that we could affirm Driscoll's enhanced sentence by relying on any of these prior convictions as alternative predicate offenses, we decline to consider them in our analysis.

15

We disagree. First, if "real estate" means "building or structure," it would mean the subsequent phrase "or any improvements erected thereon" refers only to improvements erected on an existing building or structure. That is nonsensical. Instead, a plain reading of "any improvements erected thereon" refers to any building or structure erected on real estate (i.e., land). This reading of "any real estate or any improvements erected thereon" is supported by *State v. Vaughn*, 402 N.W.2d 300 (Neb. 1987). In *Vaughn*, the Nebraska Supreme Court discussed a burglary of "a residence by the removal of a combination window screen and the raising of a kitchen window in the rear of the house," *id.* at 301, and categorized the burglary as "forcible entry of an improvement on real estate," *id.* at 302. That is, the Nebraska Supreme Court considered a burglary of a house to be a burglary of an improvement on real estate, *not* a burglary of real estate itself.

Second, as stated previously, the concept of "breaking and entering" a fence around an enclosed piece of land is not difficult to conceive. The statute, as written, plainly criminalizes cutting a fence and stealing property like crops or livestock found therein.

Because Neb. Rev. Stat. § 28-507 includes land, it does not categorically fit under the generic offense of burglary, which is limited to buildings or structures.[7] As a result, Driscoll's 1988 Nebraska burglary conviction was not a violent felony as defined by the enumerated offenses clause of the ACCA. This means Driscoll does not qualify as an

---

[7] Because we conclude that a conviction under § 28-507 does not qualify as a violent felony under the ACCA's enumerated offenses clause, we need not reach whether Driscoll's other two predicate offenses qualify under the ACCA.

16

armed career criminal under the ACCA. Consequently, he is not eligible for 18 U.S.C. § 924(e)'s fifteen-year minimum, and instead is subject to § 924(a)(2)'s ten-year maximum. The sentencing court's error was not harmless.

### III

We REVERSE and REMAND with instructions to vacate Driscoll's sentence and to resentence him.